138 So.2d 361 (1962)
Harris LEVESON, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 61-512.
District Court of Appeal of Florida. Third District.
March 1, 1962.
Rehearing Denied March 21, 1962.
John Charter Reed for Reed, Manners & Amoon, Miami, for appellant.
Richard W. Ervin, Atty. Gen., B. Clarke Nichols, and David U. Tumin, Asst. Attys. Gen., for appellee.
Before PEARSON, TILLMAN, C.J., and CARROLL and HENDRY, JJ.
*362 HENDRY, Judge.
The appellant, Harris Leveson, Jr., was tried in the Criminal Court of Record, Dade County, on charges of (1) operating a gambling room, (2) aiding in the setting up, promoting or conducting a lottery, (3) bookmaking and (4) possession of lottery tickets. See § 849.09, Fla. Stat., F.S.A.
The jury found him guilty of three of these charges, notwithstanding his plea of not guilty. A verdict of not guilty was directed as to the first charge. Thereafter he was sentenced to confinement in the county jail for eighteen months on the charge of aiding in the setting up, promoting or conducting a lottery, and he was sentenced to similar confinement for one year on each of the other two charges; these sentences to run concurrently with the first and longer one.
The appellant has assigned numerous errors as grounds for reversal of his conviction. The first and basic issue on this appeal is whether the appellant was accorded his constitutional rights in the trial court as guaranteed to him under the Fourth Amendment of the Constitution of the United States and Section 22 of the Declaration of Rights of the Florida Constitution, F.S.A., when the court permitted evidence to be introduced and used against him which was obtained under color of a search warrant.
This case presents an important question in the administration of criminal justice, especially a defendant's standing to challenge the legality of a search and seizure in the circumstances of this case.
The appellant was arrested and certain gambling paraphernalia were seized by officers of the law, who being armed with a search warrant forcibly entered an apartment in which the appellant and the gambling paraphernalia were found.
Prior to trial the appellant duly moved to quash the search warrant and to suppress the evidence obtained thereunder. The motion, among other things, alleged that the search involved was an "unreasonable search, violating the constitutional rights of the defendant as guaranteed to him by the provisions of Section 22 and Section 12, Declaration of Rights, Florida Constitution and Fourth Amendment to the Constitution of the United States";[1] that such violation occurred under color of a search warrant at a time when the defendant had a direct interest and/or was a lawful occupant of the premises searched; that the said search also violated the defendant's rights as guaranteed by § 933.18, Fla. Stat., F.S.A.
In support of the appellant's motions to quash the search warrant and suppress the evidence the appellant and his "girl friend", Barbara Clelland, the full-time occupant of the apartment, took the witness stand and offered uncontroverted testimony to the effect that at the time of the search and seizure of the articles of gambling paraphernalia from the apartment and from the appellant's person the appellant had a lawful right to be in the apartment; that the appellant had full-time possession of a key for the apartment and spent considerable time therein; that on occasions he had stayed there as long as five nights and had certain articles of clothing in the apartment at *363 the time of the search; that he and Barbara Clelland directly negotiated with the landlord for the rental of the apartment; and that he paid the rent for the first and last months as well as other months, but the lease was taken in the name of Barbara Clelland, his "girl friend" because of the appellant's marital situation  he had a wife and a home at another location. The landlord was called as a witness on behalf of the appellant and corroborated their testimony relating to the rental arrangement and to the appellant's customary visits to the apartment.
The state challenged the appellant's right to make the motions on the ground that the appellant did not have sufficient standing to contest the validity of the search warrant and the seizure of which he complains because he had failed to prove himself to be either the owner, occupant or lessee of the premises searched, or to be in possession of or have an interest therein.
The right to immunity from unreasonable searches and seizures being personal the state contended that it could not be asserted by one unless he could prove himself to be the owner, lessee or tenent or the lawful occupant of the premises searched. Mixon v. State, Fla. 1951, 54 So.2d 190; Alexander v. State, Fla.App. 1958, 107 So.2d 261; Tribue v. State, Fla.App. 1958, 106 So.2d 630. As will be seen from these and many other decisions the Supreme Court and the Courts of Appeal of our state have uniformly held that such a showing was necessary to entitle one to claim such immunity.
Recognizing this well-settled rule the trial judge denied the motions on the ground of appellant's lack of standing to make it.
During the course of the trial the evidence obtained by means of the search warrant was admitted under appellant's objections to its admissibility.
The appellant contends that the evidence clearly shows that he had sufficient interest in the apartment searched and the property seized to entitle him to object to an unreasonable search and seizure. In support of his contention he relies on the case of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 697, decided in 1960 by the United States Supreme Court, wherein the court construed the constitutional provisions involved in the instant case, under very similar facts and circumstances. In the Jones case it was said at page 259:
"Prior to trial petitioner duly moved to suppress the evidence obtained through the execution of the search warrant on the ground that the warrant had been issued without a showing of probable cause. The Government challenged petitioner's standing to make this motion because petitioner alleged neither ownership of the seized articles, nor an interest in the apartment greater than that of an `invitee or guest.' The District Court agreed to take evidence on the issue of petitioner's standing. Only petitioner gave evidence. On direct examination he testified that the apartment belonged to a friend, Evans, who had given him the use of it, and a key, with which petitioner had admitted himself on the day of the arrest. On cross-examination petitioner testified that he had a suit and shirt at the apartment, that his home was elsewhere, that he paid nothing for the use of the apartment, that Evans had let him use it `as a friend', that he had slept there `maybe a night,' and that at the time of the search Evans had been away in Philadelphia for about five days.
* * * * * *
"As a second ground sustaining `standing' here we hold that petitioner's testimony on the motion to suppress made out a sufficient interest in the premises to establish him as a `person aggrieved' by their search. That testimony established that at the time of the search petitioner was present in the apartment with the permission of Evans, whose apartment it was. The Government asserts that such an *364 interest is insufficient to give standing. The Government does not contend that only ownership of the premises may confer standing. It would draw distinctions among various classes of possessors, deeming some, such as `guests' and `invitees' with only the `use' of the premises, to have too `tenuous' an interest although concededly having `some measure of control' through their `temporary presence', while conceding that others, who in a `realistic sense, have dominion of the apartment' or who are `domiciled' there, to have standing. Petitioner, it is insisted, by his own testimony falls in the former class.
* * * * * *
"No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress when its fruits are proposed to be used against him. This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched. As petitioner's testimony established Evans' consent to his presence in the apartment, he was entitled to have the merits of his motion to suppress adjudicated."
There is no rule of procedure or law that requires our state courts to follow such decisions of the United States Supreme Court. However, they have been generally accepted as authority for similar rulings on constitutional questions relating to searches and seizures since the Fourth Amendment of the Constitution of the United States and Section 22 of the Declaration of Rights of the Constitution of Florida are the same in meaning and almost identical in wording. Houston v. State, Fla.App. 1959, 113 So.2d 582.
In the Houston case, the court stated 113 So.2d at page 584:
"The 4th Amendment to the Constitution of the United States, and Section 22 of the Bill of Rights of the Florida Constitution are the same in meaning and almost identical in wording. For this reason the ruling of the United States Courts on unreasonable searches is generally accepted as authority for a similar ruling in Florida."
While it is perfectly clear that the courts of this state are under no compulsion to follow the federal decisions as to unreasonable searches, there is no valid reason why this court should not continue the prevailing custom as set forth in the Houston case.
Viewing the question herein presented in light of the decisions of the United States Supreme Court in the Jones case and the District Court of Appeal, First District, in Houston v. State, it is concluded that the trial court was in error when it denied the appellant the right to object to the search and seizure of which he complains. He was entitled to have the merits of his motions adjudicated.
We next turn to the appellant's contention that the trial court erred in ruling that even if appellant had a right to object to the search, the affidavit for the search warrant stated probable cause and met the requirements of the law. The affidavit upon which the search warrant issued stated the following:
"BEFORE ME, ____, Judge of the Circuit Court of the Eleventh Judicial Circuit of Florida, in and for Dade County, personally appeared ED McCOLLUM, Special Investigator for the Attorney General of the State of Florida, who, being by me first duly sworn, deposes and says that he believes and has good reason to believe that in a certain building, to-wit: 135 N.W. 56 Street, Miami, Florida, and more particularly in Apartment #10 of the aforestated building containing a telephone which bears the listed number of Pl 8-8604, the building being a two-story *365 apartment building of masonry construction, painted white with pink trim facing south at 135 N.W. 56 Street, which apartment building has two stairways, one at the west end of the building and one at the east end of the building with an open patio with Apartment #10 being the last apartment on the east and upstairs, the laws against gambling and bookmaking are being violated. The reason for Affiant's belief are that he personally on Wednesday, November 25, 1959, while in Dade County, Florida, received information from a known trustworthy reliable source that the telephone listing of Pl 8-8604 in Apartment #10 at 135 N.W. 56 Street, Miami, Dade County, Florida, was being used for the purposes of illegal gambling; that Affiant personally checked the records of Southern Bell Telephone and Telegraph Company and knows that said telephone known as Pl 8-8604 is located in Apartment #10 of said building known as 135 N.W. 56 Street, Miami, Dade County, Florida, and found that said telephone is listed in the name of one BARBARA CLELLAN; that based on the long experience of the Affiant in gambling investigation, the Affiant believes and has reason to believe that Apartment #10 of the described premises is being used for the purposes of gambling in violation of the laws of Florida in that illegal bookmaking is taking place; and that Affiant believes and has reason to believe that unlawful bookmaking and gambling is actually being operated in an apartment within said building.
"THEREFORE, Affiant believes and has good reason to believe the above described apartment in the described premises, the telephone, and the occupants are engaged in the unlawful activity of bookmaking.
"WHEREFORE, Affiant prays that a search warrant be issued, according to law, commanding the Sheriff and/or Deputy Sheriffs of Dade County, Florida, or any constable therein with proper and necessary assistance to search the said premises and apartment above described and seize as evidence the bodies, telephones, telephone equipment, devices or records and other paraphenalia used in effecting illegal gambling, in order that the evidence may be procured to be used in the prosecution of such persons unlawfully in or operating said premises.
 "/s/ ED. McCOLLUM 
 "AFFIANT"
Section 933.18, Fla. Stat., F.S.A., provides, "no warrant shall be issued for the search of any private dwelling under any of the conditions hereinabove mentioned except on sworn proof by affidavit of some credible witness that he has reason to believe that one of said conditions exists, which affidavit shall set forth the facts on which such reason or belief is based."
Let us now examine this affidavit to determine whether it meets all the essential requirements of law.
Statutes authorizing seizures and search warrants should be strictly construed. Gildrie v. State, 94 Fla. 134, 113 So. 704. The affidavit in support of the search warrant itself must conform to the constitutional and statutory provisions authorizing their issues. Jackson v. State, 87 Fla. 262, 99 So. 548; Hart v. State, 89 Fla. 202, 103 So. 633. It is generally stated that "the application for a search warrant must set forth facts tending to establish the grounds of the application, or probable cause for believing they exist. Where the affidavit does not state any facts on which reason or belief of affiant is based, and there is no allegation in it on which the affiant could be held accountable for false swearing or perjury, the affidavit is insufficient." 29 Fla. Jur., Searches and Seizures, § 21, Page 180. See also, Cooper v. State, 106 Fla. 254, 143 So. 217; Carnagio v. State, 106 Fla. 222, 143 So. 164; DeLancy v. City of Miami, Fla. 1950, 43 So.2d 856, 14 A.L.R.2d 602. *366 The instant affidavit, as quoted above, speaks for itself in falling short of meeting the minimum statutory and constitutional requirements to support the issuance of the search warrant.
It is therefore determined that the affidavit upon which the search warrant issued in the instant case does not meet the requirements as set forth in the statute. The affidavit being fatally defective, the trial court should have granted appellant's motions to quash the affidavit and search warrant, and excluded all the evidence seized by the officers in the unlawful search and seizure. See Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Boynton v. State, Fla. 1953, 64 So.2d 536; Gildrie v. State, supra; Alexander v. State, Fla.App. 1958, 107 So.2d 261.
For the reasons stated the ends of justice require that the cause be remanded for a new trial.
Reversed and remanded.
CARROLL, Judge (concurring specially).
I concur in the judgment of reversal and in the opinion of the court respecting the defect or insufficiency of the affidavit; and I agree with the holding that appellant had sufficient standing, with reference to the premises, to permit him to question the search, but for a different reason than that assigned in the majority opinion. On the latter point, I do not accept the proposition stated in the last paragraph of the quoted portion of the opinion from Jones v. United States, supra, which was to the effect that anyone legitimately on the premises where a search occurs has standing to support a challenge of the legality of the search. To begin with, that statement goes beyond the facts or needs of the case in which it was made, and well beyond the facts of the present case. Here, the evidence showed the appellant to have the standing of a lessee. The pattern of a married man leasing an apartment and setting up a girl friend in it as the ostensible lessee, is not an unfamiliar one. It would be naive, indeed, to regard it as other than his apartment. Here, in addition, he mixed business, his business, in the apartment.
By making the point that Florida generally accepts as authority the interpretation of the United States Supreme Court as to the Fourth Amendment to the Federal Constitution and applies it in construing the equivalent § 22 of the Declaration of Rights of Florida, the majority opinion appears to hold or imply that the facts of this case require us to extend the law of this state to permit challenge of search by one of less standing with reference to the property than heretofore. I see no occasion in this case for any such extension of the law. The evidence shows quite adequately that appellant was a lessee-occupant. That standing and status of the appellant with reference to the property was sufficient under the holding of the Supreme Court of Florida in Mixon v. State, Fla. 1951, 54 So.2d 190, 192.
PEARSON, TILLMAN, Chief Judge (dissenting).
I am unable to concur in the careful and lucid opinion written by Judge HENDRY because I do not agree that it is necessary or advisable for the courts of the State of Florida to follow the holding of the Supreme Court of the United States in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697.
As noted by Judge CARROLL in the concurring opinion, it may be that the quoted language from Jones v. United States goes beyond the holding necessary in that case. Nevertheless, I believe that the rule as applied to the Federal Government is what the Supreme Court of the United States says it is.
It is undoubtedly true that the courts of this state have followed the rulings of the United States courts on unreasonable searches. We are not bound to do so, however, because the Fourth Amendment of the *367 Constitution of the United States is not a restriction upon the power of the states, but is a guarantee as to the conduct of the Federal Government. Thurman v. State, 116 Fla. 426, 156 So. 484; Kinkaid v. Jackson, 66 Fla. 378, 63 So. 706.[1] The question is whether the courts of Florida should adhere to Federal court decisions by applying the rule stated in the Jones case, supra, 362 U.S. at page 267, 80 S.Ct. at Page 734: "* * * anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him." I think that we should not.
The process of enlarging the rights of an accused by making it progressively more difficult to convict the guilty must reach a point where the rights of society to be protected demand a halt in that development of the law. I think public policy requires a holding that we have reached that point in the State of Florida. In determining whether that point has been reached in this case, it is proper to ask if there is a relation between the proposed extension of the application of the restrictions on search and the purpose of Section 22 of the Declaration of Rights of the Constitution of Florida. I take the purpose of the section to be to protect the homes and business establishments of the citizens of the state. The appellant in this case asks that this protection be extended to him in the apartment of his kept mistress where he was conducting a gambling business.
It seems to me that the rule in Florida should remain as stated by our Supreme Court: "To be afforded protection against an unreasonable search of premises and a seizure of property thereon, one must claim and prove himself to be the owner, occupant, or lessee of the premises searched." Mixon v. State, Fla. 1951, 54 So.2d 190, 192. The appellant did not bring himself within the classes named; therefore, he had no right to move to suppress the evidence.
I would affirm.
NOTES
[1] Section 22, Declaration of Rights, Florida Constitution, provides as follows:

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches, shall not be violated and no warrants issued, but upon probable cause, supported by oath or affirmation, particularly describing the place or places to be searched and the person or persons, and thing or things to be seized."
The Fourth Amendment to the Constitution of the United States reads:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
[1] But cf. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492.